IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION, et al.**<br><br>　　　　　**Plaintiff**<br><br>　　v.<br><br>**4NEXCHANGE, a Utah limited liability company, et al.**<br><br>　　　　　**Defendants.** | **FINAL ORDER OF DEFAULT JUDGMENT, PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS RONALD K. BASSETT AND 4NEXCHANGE**<br><br>**2:02-CV-0432 DAK**<br><br>**Judge Dale A. Kimball** |

Plaintiff United States Commodities Futures Trading Commission ("Plaintiff" or "Commission"), pursuant to Federal Rule of Civil Procedure 55(b) and the Local Rules of this Court, has filed a Motion for Final Judgment by Default, Permanent Injunction, and Ancillary Relief ("motion") and supporting memorandum against defendants Ronald K. Bassett ("Bassett") and 4NExchange, a Utah limited liability company ("4NExchange"). The Commission has moved this Court to grant permanent injunctive relief, recognize the criminal restitution previously ordered against Bassett, and impose a civil monetary penalty upon both Bassett and 4NExchange. For the reasons set forth more fully herein, the Court will grant the Commission's motion.

**I.**

**INTRODUCTION**

On May 2, 2002, the Commission filed a Complaint in this civil action against 4NExchange, Bassett, and Paul R. Grant ("Grant"). The Complaint seeks injunctive and other equitable relief for violations of the antifraud provisions of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. § 1 et seq. (2002). The Commission's Complaint contends that since at least April 1999 to May 2002 (the "relevant period"), the defendants fraudulently marketed and purported to buy and sell commodity futures contracts on behalf of members of the public. 4NExchange claimed to trade through an intermediary that in turn traded through futures commission merchants ("FCM[s]"). In reality, the defendants misappropriated customer funds and used false representations concerning the profits earned by 4NExchange to solicit customers.

On or about January 16, 2003, in connection with the same misconduct that is at issue in this action, Bassett and Grant were criminally indicted in the U. S. District Court for the District of Utah for conspiracy to commit fraud, money laundering, wire fraud and transportation of stolen money. *See United States v. Ronald Keith Bassett*, Case No. 03CR 039 (D. Utah) and *United States v. Paul R. Grant*, Case No. 03CR 310 (D. Utah). Both Bassett and Grant ultimately entered guilty pleas, and were each committed to the custody of the United States Bureau of Prisons for a term of 60 months. In addition to their respective terms of imprisonment, each was ordered to pay victim restitution in the amount of $18,645,121.89. Their obligation to pay victim restitution is joint and several with one another.

**II.**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Final Order Of Default Judgment, Permanent Injunction And Other Equitable Relief As To Defendants Ronald K. Bassett And 4NExchange ("Order") and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact, Conclusions of Law, a

permanent injunction, civil monetary penalty, and equitable relief, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), as set forth herein.

**A.      FINDINGS OF FACT**

   **a.      The Parties**

   1.   Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 et seq. (2002), and the Commission's regulation ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2007).

   2.   4NExchange, LLC is a Utah limited liability corporation, which had its main office at 4775 Alpine Cove Drive, Alpine, Utah 84604.  4NExchange has never been registered with the Commission in any capacity.

   3.   Ronald K Bassett formerly resided in Lindon, Utah and his last known address is as an inmate (inmate # 10252-081) at Federal Correctional Institution Safford, located in Safford, AZ.  Bassett has never been registered with the Commission in any capacity.

   **b.      The Fraudulent Scheme**

   3.   Throughout the relevant period, Bassett and Grant owned and operated 4NExchange, which purported to be a foreign exchange futures business but in reality operated as a massive Ponzi scheme.  4NExchange purportedly engaged in the buying and selling of foreign currency futures contacts with promised high returns.

   4.   Customers deposited funds into a 4NExchange bank account under the control of Grant and Bassett.  Customer funds were used by the defendants for a number of non-investing purposes, including without limitation: approximately $17 million of customer funds were returned to earlier customers as purported "profits" or returns; Bassett used approximately $3 million of customer funds for personal expenses; and, Bassett used approximately $10 million of customer funds to invest in various other fraudulent schemes.

5. Throughout the course of the scheme, Bassett never told customers that he and 4NExchange were using customer funds for any of these purposes. Instead, Bassett advised customers that he had transferred their funds to unidentified foreign currency traders. Supposedly, these traders would then invest the funds in futures contracts that yielded a return greater than ten percent a month – or an annual return in excess of one hundred twenty percent. Bassett advised customers their returns would be limited to between five and ten percent a month, and that 4NExchange would retain any "profits" in excess of the ten percent limitation for operating expenses and profits. Bassett also told customers that only thirty percent of their investment would be used at any given time, and seventy percent would remain in a "locked account" purportedly to prevent losses to customers. Bassett kept from customers the identity of the traders he purportedly used, advising customers that the traders' identities were proprietary and confidential. In fact, these traders never existed, and Bassett's representations to customers were false.

6. Only a tiny fraction of customer funds were ever actually used to buy and/or sell foreign currency futures contracts. Approximately $200,000 of the $30 million received from customers was invested in an account with a FCM. Bassett made no other futures transactions or engaged in any other type of legitimate investment on behalf of customers.

7. As typical of a Ponzi scheme, new customers' capital was used to pay purported "profits" or returns of capital to pre-existing customers. When Bassett was deposed, he asserted his Fifth Amendment right against self-incrimination and refused to answer any questions regarding his fraudulent activities related to 4NExchange's business activities. Later, Bassett admitted to much of his fraudulent conduct as part of his guilty plea in *United States v. Ronald K. Bassett*, including the fact that 187 customers lost a total of approximately $18,673,722 as a result of his fraudulent solicitations.

8. During the relevant period, Bassett and 4NExchange received $30,790,033 from

investors to purportedly buy and sell futures contracts on foreign currencies through three or four currency traders. A total of 220 customers gave funds to 4NExchange to engage in the buying and selling futures contacts on foreign currencies. 4NExchange never bought or sold futures on foreign currencies through any FCM or via any trading program with the over $30 million in customer funds as represented to customers, expect for the miniscule amount of $200,000 traded through Analytical Trading FX, a registered FCM. After five months, 4NExchange lost $24,705 on the $200,000 investment with Analytic Trading FX, and never earned any profits.

9. When the trading through Analytic Trading FX resulted in an overall loss, Bassett sent a memorandum to Analytic Trading FX to close 4NExchange's account and to wire the remaining balance of customer funds to 4NExchange's bank account. 4NExchange never generated any profits from any commodity trading or other business activity. Bassett and Grant used customer funds from subsequent investors to pay earlier customers ten percent monthly returns. In addition, Bassett and Grant used funds from subsequent customers to return the original funds of earlier customers.

10. From approximately April 1999 to May 2, 2002, 4NExchange distributed $17,176,265 to 4NExchange customers in the form of purported "profits" from the purported buying and selling of futures contracts on foreign currencies and as a return of customers' original investment. Of the 220 4NExchange customers, 187 customers lost a total of approximately $18,645,121.89. 4NExchange transferred millions in customers' funds into other schemes and entities controlled by Bassett – these other schemes and entities did not engage in any trading of foreign currency futures contracts.

11. Throughout the relevant period, Bassett knew that little actual trading on behalf of customers was taking place.

**B.    Conclusions of Law**

12. This Court has jurisdiction over this action pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1 (2002), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

13. This Court has personal jurisdiction over Basset and 4NExchange.

14. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), in that Basset and 4NExchange were found in, inhabited, or transacted business in this district during the relevant period, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

15. By the conduct described in Part II A above, Basset and 4NExchange violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2002), in that, in or in connection with offers to enter into, or the confirmation of the execution of, commodity futures transactions, they cheated or defrauded or attempted to cheat or defraud customers or prospective customers and deceived or attempted to deceive customers or prospective customers by, among other things: misappropriating customers' funds, misrepresenting the likelihood that customers will profit from the trading of commodity futures contracts and failing to disclose that no trading of customers' funds was actually taking place.

16. Basset and 4NExchange violated of Section 4(a) of the Act, 7 U.S.C. § 6(a), in that Basset and 4NExchange did not conduct their foreign currency futures transactions on or subject to the rules of a board of trade that has been designated by the Commission as a contract market, nor were any of the transactions executed or consummated by or through a member of such a contract market.  Basset and 4NExchange further violated of Section 4(a) of the Act, 7 U.S.C. § 6(a), in that they did not conduct their transactions on a facility registered as a derivatives transaction execution facility.

**III.**

## **ORDER FOR EQUITABLE RELIEF**

  A. **IT IS HEREBY ORDERED** that Bassett and 4NExchange are permanently restrained, enjoined, and prohibited from directly or indirectly:

  i. Cheating or defrauding or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons by making false, deceptive or misleading representations of material facts, by making false statements, by failing to disclose material facts, and by misappropriating customer funds in or in connection with orders to make, or the making of, contracts of sale of any commodities for future delivery, made or to be made for or on behalf of any other person in violation of violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii); and

  ii. Any activity that violates Section 4(a) of the Act, 7 U.S.C. § 6(a).

  B. **IT IS HEREBY FURTHER ORDERED** that Bassett and 4NExchange are permanently restrained, enjoined, and prohibited from directly or indirectly engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

  a. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

  b. Engaging in, controlling, or directing the trading of any commodity interest accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

  c. Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

  d. Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for himself and others;

  e. Introducing customers to any other person engaged in the business of commodity interest trading;

  f. Issuing statements or reports to others concerning commodity interest trading;

  g. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

  h. Engaging in any business activities related to commodity interest trading.

  C. **IT IS HEREBY FURTHER ORDERED** that the injunctive provision of this Order shall be binding upon Bassett and 4NExchange, upon any person who acts in the capacity of an agent, employee, representative, and/or assign of Bassett and 4NExchange and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Bassett and 4NExchange.

## **IV.**
## **RESTITUTION AND CIVIL MONETARY PENALTY**

**IT IS FURTHER ORDERED THAT**:

Basset and 4NExchange shall comply fully with the following terms, conditions and obligations relating to the payment of restitution and a civil monetary penalty. The equitable relief provisions of this Order shall be binding upon Basset and 4NExchange and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Basset and 4NExchange, and any person acting in active concert or participation with Basset and 4NExchange and those equitable relief provisions that relate to restitution shall be binding on any financial institutions listed herein or holding frozen funds or assets of Basset and 4NExchange, who receives actual notice of this Order by personal service or otherwise.

**A.    RESTITUTION**

Basset's and 4NExchange's violations of the Act merit the award of significant restitution. However, the Court recognizes that Basset and Grant have already been ordered to pay, jointly and severally, victim restitution in the amount of $18,645,121.89 by the criminal court in *United States v. Bassett* and *United States v. Grant* for the misconduct at issue in this civil action. Because the criminal court imposed restitution to 4NExchange's defrauded customers, the Court is not ordering additional restitution in this action.

**B.    CIVIL MONETARY PENALTY**

Good cause exists for the imposition of a civil monetary penalty ("CMP") upon Basset and upon 4NExchange. Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), and Regulation 143.8(a)(1)(i), 17 C.F.R. § 143.8(a)(1) (2007), this Court may impose an order directing each defendant to pay a CMP, to be assessed by the Court, of not more than the greater of: (a) triple the monetary gain to the Defendant; or (b) $110,000 for each violation of the Act described herein committed between April 1999 and October 22, 2000, and $120,000 for each violation of the Act described herein committed between October 23, 2000 and May 2002.

In determining the amount of the civil penalty to be paid by Basset and 4NExchange, the Court has considered the egregiousness, duration, and scope of the fraud and misappropriation. A proper showing having been made, Bassett and 4NExchange shall pay, jointly and severally, a CMP in the amount of $480,000, plus post-judgment interest.

Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be calculated by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. §1961.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Order.

ORDERED AND ADJUDGED:

DONE AND ORDERED in Chambers at Salt Lake City, Utah, this 25th day of April, 2008.

_____
Dale A. Kimball
United States District Judge


cc:  All counsel and *pro se* parties of record